SCHOTT, Judge.
In this worker’s compensation case we granted a writ of certiorari in order to consider a judgment of the trial court overruling an exception of prematurity filed by plaintiff’s employer and its insurer. The issue is whether the plaintiff, who has been paid full compensation benefits since the date of his accident on June 13, 1979, and for whom defendants have paid in excess of $30,000 in medical expenses, has not been furnished the proper medical attention because of defendants’ refusal to pay a bill for $65 to a urologist in connection with plaintiff’s alleged sexual dysfunction, and bills totaling $402 to an internist for treatment for diabetes, so that defendants’ exception of prematurity brought under LSA — R.S. *1258 23:1314 was properly overruled by the trial court.
Following his injury on June 13, 1979, plaintiff had symptoms of disc disease which prompted his orthopedic surgeon to hospitalize him and conduct myelographic studies. When these studies proved negative plaintiff was treated conservatively for his back problems. In August plaintiff became gravely ill and upon being hospitalized was found to have necrosis of the bowel, which necessitated a resection consisting of the removal of part of his intestines. At the end of 1979 he continued to have difficulty with his back, and although additional studies did not indicate disc disease the orthopedic surgeon was convinced that plaintiff had a herniated disc.
At the time plaintiff was hospitalized for the bowel resection, he was found to be suffering with diabetes mellitus and was treated for this condition by Dr. Persand, an internist. Plaintiff incurred bills of $402 for treatment of his diabetes by Dr. Per-sand.
Over the period of time while plaintiff was being treated by Dr. Garoutte, the orthopedist, and Dr. Leonard, the urologist, he complained about a gradual inability to have sexual intercourse. In May, 1980, Dr. Leonard referred plaintiff to another urologist, Dr. Merlin, who specialized in sexual dysfunction problems and who described the tests he wanted to perform on plaintiff to determine if he was sexually impotent or not. Although Dr. Merlin charged only $65 for his initial interview of plaintiff he explained that his diagnostic studies would come to approximately $2,340, including his own and the hospital bill. He explained that such studies would reveal if plaintiff was physically capable of intercourse or not but even if he were shown to be physically capable the question of psychological impotency would still have to be considered.
The trial judge initially overruled defendants’ exception of prematurity based upon the pleadings and the medical reports and correspondence with the physicians. On the application of defendants for supervisory writs we previously set aside this judgment with the following statement:
“We conclude that the plain language of this statute requires that the judge have a separate hearing of the facts of failure to render medical attention for sexual dysfunction and diabetes before proceeding with the merits of the case. Only then may the exception of prematurity be dismissed, if the facts so justify.”
Thereupon depositions of all of the doctors were taken as was the testimony of plaintiff. The trial court then overruled defendants’ exception of prematurity a second time and stated in his opinion that the sexual dysfunction and diabetes had been proved by a preponderance of the evidence to be caused by the accident. It is from this second judgment overruling defendants’ exception that we have exercised our supervisory jurisdiction, granted a writ of certiorari and reviewed the entire record in order to determine the validity of the judgment of the trial court.
With respect to the diabetes, we are satisfied that there is no evidence in the record to relate this problem to the plaintiff’s accident. The medical testimony is directly to the contrary, that diabetes melli-tus is not caused by trauma, so that the defendants properly refused to pay Dr. Per-sand’s bills for treatment of plaintiff’s diabetes. However, the sexual dysfunction problem is more complicated and not so easily disposed of.
Defendants rely almost exclusively on the fact that plaintiff complained about problems with sexual intercourse to his physician a month before the accident sued on occurred. However, plaintiff testified that his problem was minor at that time but gradually following his accident worsened and reached a point after the operation in December, 1980, when the discs were removed that he was totally impotent. Dr. Merlin, the expert on this problem, did not gainsay a definite opinion as to causation because he never reached the point where he was able to perform his tests in the first place and would not assume that plaintiff was sexually impotent without performing *1259 such tests. However, he left open the distinct possibility that whatever impotence plaintiff had before the accident could have been aggravated by his disc problems. Dr. Leonard, the urologist, who first treated plaintiff, testified that he could not find any organic cause for plaintiff’s complaints about sexual dysfunction but that such a condition could result from the anxiety experienced by plaintiff as a result of the multiple surgical procedures to which he had been subjected. Asked by defendants’ attorney if his opinion would be different if he were told that plaintiff had complained about sexual dysfunction one month prior to the accident, he answered that it could still have caused his impotence as a “psychogenic problem.”
Finally, Dr. Merlin, the acknowledged expert on the problem of sexual dysfunction, was asked how the condition could be related to the accident if plaintiff complained of sexual impotency before the accident. He answered that if he complained of the same identical problems before he would have to say that the problem existed prior to the accident. However, the trial judge had the benefit of plaintiff’s own testimony, which he apparently accepted as true, that his problem before the accident was relatively minor but became progressively worse until he became totally impotent after the last operation for removal of the discs. This disposes of Dr. Merlin’s comment that only if the problem was the same before and after the accident would he not relate the problem to the accident.
We are not unmindful of the testimony by Dr. Merlin as well as other physicians that diabetes causes impotency in fifty percent of the male patients and that diabetes causes a gradual onset of sexual impotency. However, the trial judge was charged with the primary duty of weighing this evidence in the light of all the other evidence elicited from the doctors, and we cannot say that he is clearly wrong in concluding that plaintiff’s condition was caused by the accident, or at least was aggravated by the accident and the medical procedures which resulted therefrom.
We are not unsympathetic with defendants because there is the possibility that plaintiff’s problem is not related to the accident and this may not be known until a great deal of money is spent on tests and treatment. The initial determination as to whether plaintiff is organically impotent or not is not easily made. In fact, this is all Dr. Merlin will know for $2,340. If organic impotency is established further testing will determine, hopefully, whether the condition is related to the accident or not. On the other hand, if Merlin’s tests rule out organic impotency, plaintiff may still be psychologically impotent and only further testing would determine relationship to the accident.
We are confronted with a plaintiff who admittedly had some problem of sexual dysfunction before the accident and who now says he is impotent. Since the accident he has undergone drastic surgery for the removal of over two feet of his intestines, several hospitalizations in which myelo-grams were performed, surgical removal of two discs, and catherization of the urethal canal to eliminate blockage caused by strictures following his bowel surgery. He has undergone intense suffering and a conglomeration of medical procedures involving the lower part of his body in general and the genito urinary organs in particular.
Once the court believes that he now has this problem which he did not have before the accident and Dr. Merlin says he can’t venture any opinion without testing the conclusion follows that plaintiff is entitled to such medical treatment as Merlin can provide, albeit that it may later be revealed that plaintiff’s impotency is entirely unrelated to the accident. This same problem often occurs. A plaintiff says his back hurts but medical tests are negative. He continues to complain and convinces a judge that he is hurt. He continues to receive treatment which his employer thinks is unnecessary. No one can say for certain that he is malingering and yet he may be. Nonetheless, under our imperfect system of justice the employer pays. The same problem often occurs where causation is at issue.
*1260 Unfortunately for defendants, their employee has convinced the trial court that he suffers with a condition which is commonly known to be a mixture of physical, psychological and emotional components and which is extremely difficult to diagnose and treat. Because we cannot say the trial judge was clearly wrong, we recall our writ and decline to exercise our jurisdiction any further at this time.